**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| AMANDEEP SINGH,<br><br>Petitioner,<br><br>v.<br><br>JEFFERSON B. SESSIONS III, Attorney General,<br><br>Respondent. | No. 15-71343<br><br>Agency No. A088-716-329<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 15, 2017
San Francisco, California

Before: BERZON and FRIEDLAND, Circuit Judges, and SESSIONS,[**] District Judge.

Amandeep Singh ("Singh") petitions for review of the Board of Immigration

Appeals' ("BIA") denial of his applications for asylum, withholding of removal,

and relief under the Convention Against Torture ("CAT").

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable William K. Sessions III, United States District Judge for the District of Vermont, sitting by designation.

**1**. Singh claims that he is a member of the Shiromani Akali Dal, a political party that promotes the establishment of a separate state for Sikhs in India. Singh submits that he participated in rallies, demonstrations, and other politically motivated activities, and as a result encountered three persecutory incidents: once being beaten and threatened with death by civilians belonging to the Badal Party, and twice being arrested, detained, and tortured by Punjabi Police. The Immigration Judge ("IJ") found Singh not credible, and the BIA upheld that determination. The agency's credibility determination is supported by substantial evidence.

**2**. This Court reviews "denials of asylum, withholding of removal, and CAT relief for substantial evidence and will uphold a denial supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Ling Huang v. Holder*, 744 F.3d 1149, 1152 (9th Cir. 2014) (quoting *Garcia-Milian v. Holder*, 755 F.3d 1026, 1031 (9th Cir. 2013)) (internal quotation marks omitted). Specifically, we "review factual findings, including adverse credibility determinations, for substantial evidence." *Yali Wang v. Sessions*, 861 F.3d 1003, 1007 (9th Cir. 2017) (quoting *Garcia v. Holder*, 749 F.3d 785, 789 (9th Cir. 2014)) (internal quotation marks omitted). This means that the agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "[O]nly the most extraordinary

circumstances will justify overturning an adverse credibility determination." *Bingxu Jin v. Holder*, 748 F.3d 959, 964 (9th Cir. 2014) (quoting *Shrestha v. Holder,* 590 F.3d 1034, 1041 (9th Cir. 2010)).

**3.** Under the REAL ID Act, "there is no presumption that an applicant for relief is credible, and the IJ is authorized to base an adverse credibility determination on 'the totality of the circumstances' and 'all relevant factors.'" *Ling Huang*, 744 F.3d at 1152–53 (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). Such factors include the alien's "demeanor, candor, or responsiveness." 8 U.S.C. § 1158(b)(1)(B)(iii). Demeanor findings "should specifically point out the noncredible aspects of the petitioner's demeanor." *Shrestha v. Holder*, 590 F.3d 1034, 1044 (9th Cir. 2010). The IJ may also consider inconsistencies between the petitioner's statements and other evidence in the record. 8 U.S.C. § 1158(b)(1)(B)(iii). "When an inconsistency is cited as a factor supporting an adverse credibility determination, that inconsistency should not be a mere trivial error such as a misspelling, and the petitioner's explanation for the inconsistency, if any, should be considered in weighing credibility." *Shrestha*, 590 F.3d at 1044 (citations omitted). Regardless of the factors relied upon by the IJ, the IJ must provide "specific and cogent reasons" to support an adverse credibility determination. *Id*. at 1042.

**4.** The BIA cited six specific findings made by the IJ that, in light of "the totality of the circumstances," the BIA believed supported the IJ's adverse credibility determination. 8 U.S.C. § 1158(b)(1)(B)(iii). The first two—Singh's secular appearance and his admission that he had not been baptized as a Sikh—are speculative and unconvincing. *See Shah v. INS*, 220 F.3d 1062, 1071 (9th Cir. 2000) ("Speculation and conjecture cannot form the basis of an adverse credibility finding."). However, the other four are sufficient to support an adverse credibility determination. First, Singh's demeanor when testifying—notably his "stiffness, crossed arms, and rote testimony"—was inconsistent with someone who suffered the abuse detailed in his declaration. Second, Singh's Shiromani Akali Dal membership card appeared inauthentic due to the "crude pasting" of Singh's photograph over the seal. Third, Singh's medical documentation was not contemporaneously prepared and did not explain how the information was retrieved. Finally, Singh's father's affidavit was written in English even though his father is unable to read or write English and no certificate of translation was attached.

**5.** Singh argues that the IJ's demeanor findings were "arbitrary, capricious, and are not evidenced on the record." We disagree. The IJ's "specific, first-hand observations" are "precisely the kind of credibility cues that are the special province of the factfinder." *See Manes v. Sessions*, 875 F.3d 1261, 1263 (9th Cir.

4

2017). Further, the IJ is not required to conduct a running commentary on an alien's credibility on the hearing record. *Id*. at 1264. In its demeanor findings, an IJ can consider "the expressions of [the petitioner's] countenance, how he sits or stands, whether he is inordinately nervous, his coloration during critical examination, the modulation or pace of his speech and other non-verbal communication." *Ling Huang*, 744 F.3d at 1153 (quoting *Shrestha*, 590 F.3d at 1042).

Singh also argues that it was unreasonable for the agency to discredit his documentary evidence. There is sufficient evidence in the record, however, for this court to "objectively verify [that] the IJ ha[d] a legitimate basis to distrust the documents." *Lin v. Gonzales*, 434 F.3d 1158, 1162 (9th Cir. 2006). Moreover, the IJ is not required to accept Singh's documentation as valid; "rather, the petitioner has the burden to satisfy the trier of fact by offering credible and persuasive evidence." *Yali Wang*, 861 F.3d at 1007–08. In sum, the IJ's demeanor findings were sufficiently specific, and the IJ provided specific and cogent reasons for why the questionable nature of Singh's documentary evidence undermined his credibility.

**6.** The BIA considered the totality of the record and concluded that the IJ's adverse credibility finding was not clearly erroneous. The BIA reasoned that Singh's lack of credibility "undermines all of his claims" and that "[i]n the absence

5                                                                                                          15-71343

of credible testimony, the record is not sufficient to meet his burden of proving he suffered past persecution or has a well-founded fear of being persecuted in the future." The BIA therefore affirmed the IJ's ruling denying Singh's asylum and withholding of removal claims. The BIA also held that the IJ's finding that Singh does not have a clear probability of being tortured if returned to India is not clearly erroneous. The BIA therefore affirmed the IJ's ruling denying Singh's CAT claim.

**7.** There is no evidence that compels any reasonable fact-finder to conclude that the agency's adverse credibility determination was incorrect. *See* 8 U.S.C. § 1252(b)(4)(B); *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992). After considering the totality of the circumstances, the agency reached a reasonable conclusion that Singh's was not credible. Singh's lack of credibility undermines all of his claims, and the record is not sufficient to meet his burden of proving he suffered past persecution, has a well-founded fear of being persecuted in the future, or that it is more likely than not that he would suffer torture by or with the acquiescence of a government official in India. Because Singh was found not credible, eligibility for CAT protection would have to be based exclusively on State Department country reports. Based on those reports, there is no reason to believe that Singh could not safely relocate to another region in India.

**8.** Accordingly, the agency's adverse credibility determination is supported by substantial evidence, and Singh cannot satisfy his burden of proving that he is

eligible for asylum and withholding of removal. Similarly, the agency's determination that Singh is not entitled to protection under the CAT is supported by substantial evidence. For the foregoing reasons, Singh's petition for review of the BIA's decision is **DENIED**.

15-71343

*Amandeep Singh v. Sessions*, No. 15-71343

Berzon, J., dissenting:

I would grant the petition.  Although there may be other bases for an adverse credibility finding, the factors actually relied upon by the Immigration Judge ("IJ") and Board of Immigration Appeals ("BIA") do not constitute substantial evidence supporting the finding.[1]  And we must review the agency's reasoning, not what it might have said.  *See, e.g.*, *Recinos De Leon v. Gonzales*, 400 F.3d 1185, 1189 (9th Cir. 2005).

First, as the majority recognizes, central reasons given by the BIA for approving the adverse credibility determination should not have been considered.  Lack of adherence to Sikh practice and failure to be baptized are not probative of whether petitioner was likely to support a political organization advocating for a Sikh state.  Sikhs, like other distinct groups, have ties to each other that go beyond strict religious adherence; less religious members may well support the interests of the more religious, or work to advance the cultural interests of the overall community.  *See*, for example, regarding the secular Jews who largely created the

---

[1]Notably, the Attorney General's brief implicitly recognizes that the BIA's reasoning does not stand up, as it relies heavily on factors not mentioned by the agency.  Commendably, the government attorney arguing before us acknowledged before argument that this reliance in the brief on different reasoning than that adopted by the BIA was improper.

State of Israel, Walter Laqueur, *The History of Zionism* 133, 170 (3rd ed. 2003);

Yaacov Yadgar, *Sovereign Jews: Israel, Zionism, and Judaism* 82, 103-04 (2017).

Second, and critically, neither the IJ nor the BIA relied on either the membership card or the medical documentation as affirmative support for the adverse credibility finding. Instead, the IJ, with BIA approval, declined to consider the card as "persuasive corroboration of his supposed political activities in India," and "[did] not consider the medical documentation . . . as supporting the bona fides of [Singh's] past persecution claim."[2]

As to the father's affidavit, Singh offered an explanation concerning why the document was in English—that Indian courts can translate Punjab statements into English. The IJ did not comment on that explanation or state why it was disbelieved. Without such comment, that factor is not evidence for an adverse credibility finding. *See, e.g.*, *Ai Jun Zhi v. Holder*, 751 F.3d 1088, 1092-93 (9th Cir. 2014); *Osorio v. INS*, 99 F.3d 928, 933 (9th Cir. 1996) (holding that the agency "must address in a reasoned manner" any explanations offered by

---

[2]I note as well that there is nothing particularly odd about a medical doctor having records regarding medical treatment provided four years before. And when doctors issue reports on medical treatment, they do not usually explain how they are "able to reconstruct the record of medication and treatment," as the BIA would require. That the doctor had not provided the patient with a written medical report at the time of treatment is also not unusual; although many doctors in this country now do so, that is a fairly recent practice.

petitioners for "perceived inconsistencies").

That leaves, as supporting the adverse credibility finding, demeanor. As far as I can determine, no Ninth Circuit case has approved reliance on demeanor alone as substantial evidence for an adverse credibility finding. I would not do so here.

The demeanor assessment relied on the IJ's impression that Singh's "demeanor was . . . inconsistent with someone who had undergone several arrests and beatings," because Singh "sat stiff" and crossed his arms, and because "[h]is testimony was rote and appeared to have been rehearsed." Of course, court testimony is usually "rehearsed," to a degree. The arrests and beatings were four years before Singh testified, so any severe emotional impact could well have passed. And, having read the testimony myself, it appears considerably more coherent and responsive than is often the case.

Further, demeanor is often in the eyes of the beholder. And when the beholder's several other reasons for reaching an adverse credibility finding otherwise must, as here, be disregarded, we should be particularly skeptical about giving controlling weight to a demeanor assessment. *Cf. Penasquitos Village Inc. v. NLRB*, 565 F.2d 1074, 1086 (9th Cir. 1977) (Duniway, CJ., concurring in part and dissenting in part) ("I doubt if there are many cases in which the fact finder relies on demeanor alone. There may not be any; I hope that there are none. . . .

3

Anyone who really believes that he can infallibly determine credibility solely on the basis of observed demeanor is naive.").

This skepticism is heightened, in my view, when some of the reasons given are downright silly. The IJ here, for example, found the membership card presented suspect because it said Singh was an "Active Member," although he had just joined. But many organizations have categories of membership that include "active" status. A brand-new federal judge, for example, is an "active judge," as opposed to a "senior judge" or a "retired judge."

I would hold that the agency's adverse credibility finding is not based on substantial evidence, grant the petition, and remand to the agency to consider whether Singh met the one-year filing requirement for asylum, as well as to determine whether he otherwise meets the requirements for asylum and withholding of removal.[3] I therefore respectfully dissent.

---

[3]I concur in the denial of the petition with regard to the Convention Against Torture claim.